El Pueblo, Demandante y Apelado, *v.* Matos y Matos, Acusados y Apelantes.

Apelación procedente de la Corte de Distrito de Ponce en causa por asesinato en primer grado.

No. 1113.—Resuelto en julio 15, 1918.

Sobreseimiento del Caso—Moción Presentada Fuera de Tiempo.—Cuando un acusado solicita el sobreseimiento del caso por el fundamento de que han transcurrido más de ciento veinte días después de presentada la acusación sin que se haya comenzado el proceso y tal solicitud la hace después de haber sido llevado al juicio, se considerará que el acusado renunció tal beneficio.

Dilación del Juicio.—El perjuicio que se cause a una parte por la dilación del juicio no es la cuestión a resolver en el presente caso, sino si existe justa causa para que el juez decrete la suspensión.

Asesinato en Primer Grado—Suficiencia de la Acusación.—Alegándose en la acusación que la muerte fué causada por los acusados de manera ilegal y voluntaria, con malicia premeditada y propósito firme y deliberado, acechándolo y atacándolo alevosamente, aunque no contenga la afirmación de que la muerte ocurrió al perpetrarse un robo, tal acusación imputa un delito de asesinato en primer grado y podría probarse en el juicio que la muerte ocurrió al perpetrarse un robo.

Jurisdicción de la Corte para Conocer del Delito.—La jurisdicción de la corte para conocer del delito de asesinato no está determinada por el lugar donde ocurre la muerte sino por aquel donde la herida que la produce fué inferida.

Imputación Suficiente.—La imputación de que a una persona se le infirió una herida mortal en determinada fecha y que de ella falleció inmediatamente la persona herida, es suficiente para demostrar que murió antes de la presentación de la acusación y por tanto, dentro de los ciento veinte días de haber sido inferida la herida.

NUEVO JUICIO.—Cuando la corte inferior ha cometido un error, pero se demuestra que tal error no causa perjuicio, no debe revocarse la sentencia y ordenarse un nuevo juicio.

ELEMENTOS QUE CONSTITUYEN EL CORPUS DELICTI.—El hecho de lá muerte y la causa que la produce son los únicos elementos que constituyen el *corpus delicti*. Y para que una persona pueda ser declarada culpable de un delito deben probarse esos dos elementos del *corpus delicti* y después, que el acusado es la persona que lo cometió.

INSTRUCCIONES AL JURADO.—El hecho de que la corte instruyera al jurado en el presente caso respecto a que la muerte ocurrió dentro de un año y un día de haber recibido la causa de la muerte, no quiere decir que estuviera instruyendo al jurado, con esas palabras, que la muerte había sido recibida de manos extrañas como resultado de un acto criminal, ya que la causa de la muerte pudo no haber sido un acto criminal sino casual.

INSTRUCCIONES INSUFICIENTES.—El remedio para hacer que las instrucciones al jurado sean más específicas es mediante solicitud ante el juez de la corte inferior; pero no habiéndose hecho ésto, no pueden atacarse por insuficientes ante el tribunal de apelación.

INSTRUCCIONES REFERENTES A HOMICIDIO.—Cuando claramente aparece demostrado por la prueba que no se trata de un delito de homicidio sino de un asesinato, no tiene necesidad el juez de dar instrucciones referentes a homicidio.

Los hechos están expresados en la opinión.

Abogado del apelado: *Sr. Salvador Mestre, Fiscal.*

Abogado de los apelantes: *Sr. Alfonso Lastra.*

EL JUEZ ASOCIADO SR. ALDREY, emitió la opinión del tribunal.

En la Corte de Distrito de Ponce fué acusado Ramón Matos en unión de Domingo Matos, fallecido durante la tramitación de esta apelación, del delito de asesinato en primer grado, y en el recurso que tenemos pendiente contra la sentencia que lo condenó a sufrir la pena de muerte alega en primer término que la corte inferior cometió error al negar su petición de que sobreseyera la causa por haber transcurrido más de 120 días entre la presentación de la acusación por el fiscal y la celebración del juicio, a cuyo sobreseimiento tenía derecho de acuerdo con el párrafo 2º. del artículo 448 del Código de Enjuiciamiento Criminal que dice así:

"Art. 448.—A menos que exista justa causa contraria, el tribunal decretará el sobreseimiento del proceso en los casos siguientes:

"1. * * *

"2. Cuando un acusado, cuyo juicio no haya sido transferido a petición suya, no sea sometido a juicio en el término de ciento veinte días, a contar desde la presentación de la acusación."

En este caso la acusación fué presentada por el fiscal el día 12 de septiembre de 1915, y el juicio se comenzó el 9 de marzo de 1916, habiendo por tanto transcurrido más de 120 días entre ambos actos. Veamos si estuvo justificada la negativa de la corte inferior.

El abogado hizo la petición de sobreseimiento en este proceso demasiado tarde porque ya estaba elegido, aceptado y juramentado el jurado que había de conocer del proceso. En el caso de *El Pueblo* v. *Ayala,* 19 D. P. R. 943, ya dijimos que si tal moción fuera presentada después del juicio o aún después que el jurado ha quedado constituído, entonces, de conformidad con la jurisprudencia establecida por la Corte. Suprema de California podrá considerarse que el acusado renunció implícitamente ese derecho; y en el caso de *El Pueblo* v. *Hawkins,* 127 Cal. 372, citado en el caso anterior, se resolvió de una manera definitiva esta cuestión en la siguiente forma: "No existe ningún deber por parte de la corte de desestimar el caso bajo la sección 1382 a menos que el acusado lo solicite, así es que este derecho como cualquier otro privilegio estatutorio del acusado que no afecte a la discreción de la corte puede ser renunciado. Es cosa bien resuelta que la constitución del jurado es parte del juicio. (*Silcox* v. *Lang,* 78 Cal. 118): que la exposición del acusado a ser juzgado y convicto empieza cuando el jurado ha quedado encargado del asunto y en esa situación se halla el jurado cuando sus miembros han sido seleccionados y juramentados. (Cooley's Constitutional Limitations, 6ª. edición, página 399.) Por tanto, cuando el acusado solicitó el sobreseimiento había sido ya llevado a juicio y estaba en el juicio, sin que hubiera hecho objeción previa de que el término de ciento veinte días había expirado. Si en esos momentos podía suscitar la cuestión por primera vez podía hacerlo también al dictarse el veredicto o en cualquier momento del juicio. Estamos conven-

cidos de que el estatuto nunca tuvo esa intención y debemos
sostener que el acusado renunció su beneficio ·(si a él tenía
derecho) por no haberlo reclamado en tiempo oportuno.   Los
siguientes casos tienden a sostener esta conclusión.   *People*
v. *Bennett,* 114 Cal. 56, 58;   *Polack* v. *Gurnee,* 66 Cal. 266;
*Pueblo* v. *Romero,* 18 Cal. 89;   *Pueblo* v. *Johnson,* 104 Cal.
418.''

Lo expuesto sería suficiente para que nos abstuviéramos
de considerar ese motivo de error pero, en vista de que se
·trata de un delito tan grave como el de asesinato y de la
pena que lleva consigo, queremos decir que hubo justa causa
para la dilación· en la celebración del juicio· pues habiendo
sido señalado para tener lugar dentro de los 120 días seña-
lados por la ley, algunos días antes del señalado pidió la
defensa del acusado que se le entregasen un pantalón y una
piedra, que el fiscal había ocupado en otra investigación sobre
el mismo hecho, para ser examinadas en un laboratorio quí-
mico las manchas que tenían y por virtud de esa petición
ordenó el juez que esos efectos y otra piedra y un palo fuesen
remitidos al laboratorio químico de San Juan con encargo
de que practicara el examen para antes del día señalado para
el juicio, para el que faltaba cerca de un mes.   Pocos días
antes del señalado para el juicio pidió el fiscal a la corte que
suspendiera el señalamiento hecho porque según declaración
jurada del perito químico encargado del examen de las man-
chas no podía terminarlo para el día que estaba señalado el
juicio y la corte después de oir a las partes y teniendo en
cuenta que el examen químico se hacía a petición de la de-
fensa y que era de influencia en el asunto, suspendió el juicio
en espera de que las partes estuvieran preparadas para llevar
a él toda su evidencia, a fin de que se administrara justicia.
Nos parece que estas razones son suficientes para justificar
la dilación, beneficiosa para los acusados ya que a su instancia
se enviaron la piedra y el pantalón al laboratorio químico
para el examen cuya tardanza en practicarlo fué lo que ori-
ginó la suspensión del juicio; y aunque fué el fiscal el que

pidió la suspensión por no estar hecho el examen que interesaba la defensa, sin duda alguna lo hizo para la más recta y clara administración de justicia. Además la orden de la corte suspendiendo la celebración del juicio para el día que estaba señalado tiene como todas las resoluciones judiciales, la presunción de que fué justa por lo que los acusados en su moción pidiendo el sobreseimiento debieron exponer las razones que demostraran la falta de justicia de la resolución que suspendió el juicio. *El Pueblo* v. *París,* 25 D. P. R. 102.

Aunque se alega por los acusados que la dilación en el juicio les causó perjuicio porque un testigo importante para ellos murió en el período comprendido entre los dos señalamientos y que tuvieron que presentar ante el jurado esa declaración por boca de otras personas, lo que a su juicio no tiene tanta importancia como si la hubiera prestado directamente, sin embargo la cuestión a resolver no es si hubo perjuicio con la suspensión sino si hubo justa causa para que el juez decretara la suspensión como ya hemos visto que la tuvo.

El día del juicio alegó la defensa que los hechos relatados en la acusación no eran constitutivos de delito porque en ella no está bien establecida la jurisdicción de la corte, y ahora expone que la resolución adversa a esa alegación constituyó un error de la corte inferior que debe producir la revocación de la sentencia condenatoria, porque los hechos relatados no imputan el delito de asesinato en primer grado y porque la corte carecía de jurisdicción para ver y fallar el caso.

La acusación en este caso es por el delito de asesinato en primer grado e imputa a los acusados que en Guánica, dentro del distrito judicial de Ponce, con ocasión de perpetrar un delito de robo en la persona de Nicolás Quiñones, hombre anciano, de una manera ilegal y voluntaria, con malicia premeditada y propósito firme de quitar la vida a dicho Nicolás Quiñones, armados de garrote lo acecharon y alevosamente lo atacaron produciéndole innumerables golpes a consecuencia de los cuales falleció inmediatamente.

En apoyo de ese alegado error expone la defensa que tal como está redactada la acusación este hecho no constituiría asesinato en primer grado si no fuera porque alega la muerte con ocasión de robo, pero que la alegación de robo se ha hecho de una manera genérica como conclusión legal y en esa forma no es suficiente para imputar el delito de asesinato pues debió haberse especificado el delito de robo con todas las circunstancias determinantes del mismo.

Aunque no alegara la acusación que la muerte ocurrió al perpetrarse el delito de robo sería suficiente para imputar un delito de asesinato en primer grado porque expone que la muerte de Quiñones fué causada por los acusados de manera ilegal y voluntaria, con malicia premeditada y propósito firme y deliberado, acechándolo y atacándolo alevosamente.   Según el artículo 199 del Código Penal el asesinato es dar muerte ilegal a un ser humano con malicia premeditada siendo de primer grado, según el artículo 201, cuando entre otros casos se perpetrare la muerte por medio de acecho o alevosamente. Así, pues, aunque la acusación no contuviera la afirmación de que ocurrió al perpetrarse un robo, circunstancia que debe convertir la muerte de una persona en asesinato en primer grado, imputaría un delito de asesinato en primer grado y podría probarse en el juicio que la muerte ocurrió al perpetrar un robo según hemos resuelto en el caso de *El Pueblo v. Izquierdo,* 25 D. P. R. 382.   No siendo, pues, necesaria la alegación del robo no necesitaba ser más específica de lo que se hizo.

En cuanto a la falta de jurisdicción alega el abogado de los apelantes que el requisito que la confiere es el hecho de que la muerte violenta y criminal, no las heridas o golpes que la producen, haya ocurrido dentro de los límites territoriales del tribunal al que se presenta la acusación; y sentado esto, sin más consideración de esta cuestión, pasa a manifestar que las palabras de la acusación que dicen que Quiñones falleció inmediatamente no son suficientes para afirmar que murió dentro de la jurisdicción de la corte en el

sitio ni en la fecha en que recibió las heridas, hechos que alega son esenciales para conferir jurisdicción a la corte. No es esto así. En la ley común podía juzgarse del delito en el lugar donde la muerte ocurriera aunque las heridas hubieran sido inferidas en otra jurisdicción, pero en jurisdicciones como la nuestra en la que el artículo 8°. del Código de Enjuiciamiento Criminal dispone que la jurisdicción correspondiente a los delitos radica en la corte de distrito del respectivo distrito judicial dentro del cual se cometieren, la jurisdicción para conocer no está determinada por el lugar de la muerte sino por aquel donde la herida que la produce fué inferida y por tanto no necesitaba alegar el lugar de la muerte. Wharton on Homicide, 3ª. edición, p. 845. 21 Cyc. 835 y 836. El delito de asesinato se comete cuando se asesta el golpe que produce la muerte siendo ésta una consecuencia de aquél. *El Pueblo* v. *García,* 18 D. P. R. 846.

En consecuencia las palabras "falleció inmediatamente" no es necesario considerarlas en el sentido de si son suficientes para precisar si la muerte ocurrió en el mismo sitio en que la herida fué causada.

En cuanto al tiempo en que ocurrió la muerte esas palabras son bastantes para significar que la muerte tuvo lugar dentro de un año y un día de haberse inferido el golpe de que se acusa, término requerido por la ley, pues gramaticalmente son expresivas de un momento muy próximo a aquel en que la herida mortal fué causada. La imputación de que se infiere a una persona una herida mortal en una fecha determinada y que de ella falleció inmediatamente la persona herida, como se alega en este caso, es suficiente para demostrar que murió antes de la presentación de la acusación y por tanto antes de un año y un día de haber sido inferida la herida. Wharton on Homicide, 3ª. edición, p. 842.

En vista de lo expuesto no existieron en la acusación los defectos que se le atribuyen y podemos continuar con los otros errores que se alegan.

Se queja el apelante de que la corte inferior permitió en el juicio que al testigo Narciso Torres se le preguntara por el fiscal lo siguiente: "¿Ud. supo por allí si habían matado a don Nicolás Quiñones?" a lo que contestó: "Un martes supe que lo habían matado por habérselo oído decir a Dolorito Villa"; pregunta que alega ser sugestiva e impertinente para probar que la muerte era el resultado de un crimen y a la que se opuso cuando fué formulada, y contestación que era inadmisible por ser de referencia y cuya eliminación de las pruebas pidió.

Aunque la pregunta puede calificarse entre las sugestivas y la contestación resueltamente como de referencia, sin embargo no fueron perjudiciales para los acusados y por ello no debe ordenarse un nuevo juicio, pues un médico declaró respecto a la causa de la muerte de Quiñones y manifestó que fué producida por los golpes que presentaba en su cuerpo causados por arma contundente que no pudo manejar él mismo sino una persona extraña. Cuando se demuestra que el error no causa un perjuicio, como en este caso se demostró que no lo causó, entonces no debe revocarse la sentencia y ordenarse un nuevo juicio. *El Pueblo* v. *Español,* 16 D. P. R. 213.

No hubo error como entienden los acusados en que la corte permitiera que el médico que había hecho la autopsia de Quiñones a raíz de su muerte tuviera ante su vista en el juicio celebrado casi un año después el dictamen que él había rendido entonces, porque esto servía para refrescar la memoria del testigo y está autorizado por el artículo 154 de la Ley de Evidencia. La declaración de este testigo obrante en la transcripción de esta apelación demuestra cuán previsora ha sido la ley al permitir que esto se haga, y cómo hubiera sido difícil que el testigo recordara, si no tenía ante su vista su dictamen, los muchos golpes y heridas que presentaba el cuerpo de Quiñones y la serie de detalles que contenía su dictamen que humanamente le hubiera sido imposible recordar casi un año después. El dictamen no fué admitido como

prueba y lo único que hizo el testigo fué referirse a él, leyéndolo quizás en muchos particulares pero equivaliendo esto a su declaración en el juicio con la oportunidad de la parte contraria de repreguntar sobre todos los extremos que él declaraba.

En el quinto motivo del recurso se queja la defensa del apelante de que la corte inferior permitiera que la testigo Francisca Matos declarara sobre admisiones de los acusados antes de que estuviera probado el *corpus delicti*.

Admite el apelante que se había probado entonces la muerte del ser humano Nicolás Quiñones. En cuanto a que tal muerte fuera debida a la agencia criminal de otra persona, aunque sostiene que la prueba fué inconsistente sin embargo la declaración prestada por el médico que hizo la autopsia del cadáver es bastante para deducir de ella que Quiñones murió de los golpes y heridas que le infirieron manos extrañas a las suyas. Con esto estaba probada la existencia del *corpus delicti* o sea la existencia de un crimen cuando Francisca Matos fué llamada a declarar sobre admisiones de los acusados. Estos son los únicos elementos que constituyen el *corpus delicti* pues con ellos quedó demostrada la comisión de un crimen en la persona de Quiñones. (Wharton's Criminal Law, 11ª. edition, p. 437–439. De modo que para que una persona pueda ser declarada culpable de un delito deben probarse esos dos elementos del *corpus delicti,* y después que el acusado es la persona que lo cometió.

La alegación de este error ha sido motivada por la equivocada idea de la defensa del apelante de que la prueba de la culpabilidad forma parte del *corpus delicti*.

El sexto motivo de error alegado por el apelante está redactado en estos términos:

"La corte inferior erró al no permitir que el médico que propuso la defensa hiciera el análisis de las piezas de convicción que la propia defensa interesaba, obligando a los acusados a que soportaran el que dichas piezas fueran remitidas al laboratorio oficial; y también co-

metió error el tribunal inferior en este respecto, al no disponer que el resultado del análisis se comunicara directamente a la defensa permitiendo que dicha evidencia llegara a manos de ella por conducto del Attorney General y del fiscal del distrito de Ponce, dando lugar con dicho procedimiento irregular a que el pueblo conociera tal evidencia antes que la defensa, perteneciendo ella a la defensa.''

Como hemos indicado al principio, algunos días antes del señalado por primera vez para el juicio el abogado de los acusados pidió a la corte que ordenara al fiscal que le entregara copia certificada de las declaraciones que habían prestado Felipe Quiñones, Dámaso Almodóvar y Demetrio Quiñones contra quienes primero se siguió la investigación del caso; copia de la orden de arresto expedida contra ellos por el fiscal del distrito de Ponce; copia de la orden de su excarcelación y que además se le entregaran una piedra y los pantalones que se ocuparon a Demetrio Quiñones para enviar ambas cosas al laboratorio químico para el análisis de las manchas que tenían, que aparecen ser de sangre, todo con objeto de probar que los dichos Quiñones y Dámaso Almodóvar fueron los únicos autores del crimen y no los acusados.

Después de oir al fiscal resolvió la corte esa moción declarándola sin lugar, en cuanto a las confesiones de Felipe Quiñones y de Dámaso Almodóvar porque no existen en poder del fiscal; nada declaró en cuanto a la de Demetrio Quiñones y con respecto a los objetos que se pedían dispuso que por el márshal de la corte fueran traídas al laboratorio químico de esta ciudad para ser examinadas las manchas de los pantalones y de la piedra, y que además se remitieran al laboratorio con igual objeto un palo y otra piedra. Esta resolución fué excepcionada por el abogado pero sin especificar en qué se fundaba ni llamar la atención del juez a qne dejaba de proveer sobre la declaración de Demetrio Quiñones. También se opuso la defensa de los acusados, sin que sepamos los motivos, a la petición del fiscal de que se suspendiera el señalamiento que estaba hecho del juicio del caso

fundado en que no estaría terminado el informe pericial. Por último, estando señalado el juicio para el 9 de marzo solicitaron los acusados en 28 de febrero anterior que se ordenara al secretario les diera copia de la declaración de Demetrio Quiñones y que se le diera copia también del análisis efectuado en las piezas de convicción. Este no había sido recibido entonces y la corte ordenó que se telegrafiara al Director de Sanidad para que lo enviase a más tardar para el 7 de marzo. El informe fué enviado al fiscal y el mismo día en que lo recibió lo entregó al abogado de los acusados.

La queja del apelante es que a pesar de que la piedra y el pantalón eran pruebas de la defensa fueron sin embargo utilizadas y presentadas en el juicio por la acusación.

El apelante descansa para su alegación de error en la premisa errónea de que la piedra y el pantalón a que venimos refiriéndonos eran pruebas suyas cuando habiendo sido ocupados en la investigación que se hizo de la muerte de don Nicolás Quiñones eran pruebas del fiscal, aunque entendiera la defensa de los acusados que pudiera servir para la defensa de éstos. Además éstos no pueden tener motivos de queja porque dichas piezas fueron presentadas en el juicio así como el análisis de sus manchas que era el objeto para el cual las reclamaba.

En cuanto a que el examen se hiciera en el laboratorio químico no vemos ni se demuestra en qué pudo perjudicar esto al apelante.

Por lo que respecta a la declaración de Demetrio Quiñones tampoco vemos qué perjuicio existiera para el apelante ya que fué presentada también en el juicio.

Dice así el siguiente motivo del recurso:

"La corte inferior erró al permitir que el fiscal del distrito de Ponce en su declaración como testigo de cargo, expusiera ante el jurado, con la oposición de la defensa, cuáles fueron sus conclusiones en la investigación que efectuó con motivo de la muerte de don Nicolás Quiñones, en relación con los anteriores acusados Darío Almo-

dóvar, Demetrio Quiñones y Felipe Quiñones, porque según la corte, el fiscal en Puerto Rico tiene todas las atribuciones de un gran jurado.''

Declaraba el fiscal como testigo en el juicio que había recibido una investigación hecha en este caso por el Juez Municipal de Yauco con tres detenidos nombrados Felipe Quiñones, Dámaso Almodóvar, y Demetrio Quiñones; que a éste, que aparecía confeso del crimen, le hizo varias preguntas, relataba sus contestaciones y la forma en que las daba, también exponía la negativa de los otros dos y sus explicaciones, así como que el fin de su interrogatorio era ver si incurrían en alguna contradicción. En este momento se opuso la defensa a que siguiera declarando alegando que el fiscal iba a exponer la conclusión a que llegó en una investigación contra otras personas, objeción que fué desestimada por la corte para la mejor evidencia del caso y además porque el fiscal tiene las atribuciones de un gran jurado para poder resolver si hay causa probable o no para presentar acusaciones.

Antes de seguir adelante debemos hacer constar que la investigación fué seguida primeramente contra Demetrio Quiñones, Dámaso Almodóvar y Felipe Quiñones en virtud de la confesión del primero y de su acusación contra los otros, pero que como quince días después fueron puestos en libertad y se siguió otra investigación contra los Matos en la que confesaron ambos que cometieron el delito.

Es cierto, como sostiene la defensa del apelante, y de acuerdo con los artículos 19 y 35, No. 3, de la Ley de Evidencia, que cuando un fiscal declara en un juicio no puede hacer manifestaciones que no le serían permitidas a cualquier otro testigo y que tampoco puede exponer su opinión, como no podría hacerlo un miembro del gran jurado en los tribunales donde existe esta institución, respecto a si no hubo causa probable para acusar a determinadas personas; pero en este caso el fiscal no llegó a declarar su opinión respecto a no existir motivo para no acusar a otras personas del cri-

men que se persigue en esta causa y aunque sus manifesta-
ciones claramente fueron de referencia y equivocada la teoría
de la corte inferior al permitirlas, sin embargo aparece que
no hubo perjuicio porque la conducta de la defensa fué du-
rante todo el juicio y aún antes de él, que sus representados
no eran culpables porque la muerte fué causada por los tres
primeramente detenidos y ellos mismos después ofrecieron
esta prueba.

Si la parte acusada no hubiera presentado en el juicio
la prueba que había contra Almodóvar y los otros hubiera
sido un error en el fiscal y de la corte el permitir que presen-
tara la declaración de Demetrio Quiñones anticipando de este
modo uno prueba de refutación a la teoría de la defensa de
los acusados.

En el octavo motivo de error se queja el apelante de que
se permitiera al fiscal que leyera la declaración que había
prestado ante él Demetrio Quiñones.

Este motivo de error está fundado exclusivamente en los
fundamentos de la resolución del juez y no en la resolución
misma por lo que si ésta es correcta prescindiremos de con-
siderar sus fundamentos.

Cuando trató el fiscal de presentar la declaración escrita
prestada por Demetrio Quiñones la oposición que hizo la
defensa fué porque para que fuera admisible tendrían que
probarse antes muchas cosas. A esta forma vaga resolvió la
corte permitiendo la presentación de la declaración y en-
tonces en la objeción concretó su oposición la defensa ha-
ciendo constar que no se había probado la muerte de Deme-
trio, que su declaración fuera espontánea, ni que la cruz o la
firma puesta en ella sea de él. Sin embargo todos estos
extremos aparecieron justificados por la declaración del fiscal
y la muerte se justificó después, de modo que este defecto
quedó subsanado y la admisión resultó ser legal.

Aunque ahora en esta apelación se alega por primera vez
que la declaración era inadmisible porque Demetrio Qui-
ñones la rindió en su propio beneficio, queremos sin embargo

decir que esa regla se refiere a las declaraciones que prestan los acusados en su beneficio (12 Cyc. 426) y Demetrio Quiñones no estaba acusado en esta causa.

Las confesiones hechas ante el juez municipal por los acusados Ramón y Domingo Matos fueron presentadas como prueba en el juicio pero sostiene el apelante en el noveno de los errores que alega que se admitieron sin el debido proceso de ley.

Cuando las presentó el fiscal se opuso la defensa a su admisión fundado en que no se había identificado debidamente el signo puesto en ellas por los acusados y también por no constar en las declaraciones escritas que los acusados fueron advertidos de su derecho a no declarar.

No solamente aparece de la declaración del juez municipal que era entonces de Ponce, Sr. Quiñones, que él hizo tal advertencia y otras más a los acusados y que el signo o cruz que está puesto al pie de cada una de ellas fué puesto por el respectivo declarante sino que en el principio de cada declaración se hace constar que se les hicieron esas advertencias, por lo que no fué fundada la objeción que la defensa hizo a la admisión de esas confesiones y la corte no cometió el error que se le atribuye.

Ahora se alegan otros fundamentos de objeción que no se expusieron al juez pero que tampoco existían.

Aunque en décimo lugar alega el apelante que fué error de la corte inferior permitir al fiscal que presentara prueba después que la defensa terminó con la suya sin embargo esto no sólo es discrecional en la corte, en bien de la justicia, sino que lo autoriza el artículo 233 del Código de Enjuiciamiento Criminal en su inciso quinto, enmendado por la Ley de 11 de marzo de 1909, página 137 y también el 234. Asimismo el artículo 149 de la Ley de Evidencia faculta al juez para regular el orden de las pruebas y la regla 24 de las cortes de distrito.

Por otra parte el fiscal lo que hizo fué terminar de presentar una prueba que había comenzado antes de terminar su evidencia.

En undécimo lugar se alega que la corte no debió aceptar el veredicto del jurado porque es contrario a la prueba y a derecho.

Discrepamos en absoluto de lo sostenido por el apelante.

El veredicto no es contrario a las pruebas. Estas demostraron que don Nicolás Quiñones falleció el lunes 28 de junio de 1915 a consecuencia de varios golpes y heridas dadas con palos y piedras, producidas por mano extraña; que ese día, como en los otros lunes, fué desde la finca de la que era mayordomo a buscar dinero a Yauco para pagar los jornales de los empleados: que en Yauco satisfizo algunos y que regresaba con parte del dinero para hacer los pagos en su finca; que después de muerto no se le encontró dinero alguno pero los carboneros de la finca reclamaron y se les pagó $36.96 que debió haberles abonado el Sr. Quiñones; que al principio de la investigación de las causas de su muerte fueron detenidos Felipe Quiñones, Dámaso Almodóvar y Demetrio Quiñones por la acusación que hizo el último contra los dos y por su propia confesión, así como por la declaración de un viejo y un niño que dijeron haber visto pasar a los tres por el camino donde fué encontrado muerto don Nicolás Quiñones; que posteriormente Demetrio Quiñones declaró ante el fiscal del distrito y ante el Juez Municipal de Ponce no ser cierto que él, su hermano y Almodóvar hubieran cometido el crimen y que la confesión la hizo por amenazas de la policía; que habiendo manifestado Demetrio Quiñones en sus primeras declaraciones que un pantalón que le fué ocupado tenía manchas de sangre del interfecto Quiñones, sin embargo resultó luego en el análisis químico de dichas manchas que no eran de sangre sino de procedencia vegetal; que un palo que fué ocupado en la casa del viejecito y del niño y que según éste le había sido entregado por Demetrio Quiñones que era con el que mataron a don Nicolás y que parecía tener man-

chas de sangre y cabellos de persona adheridos a las manchas, resultó también del análisis químico que no eran manchas de sangre sino de las resinas de la propia madera y que no tenía cabellos adheridos sino fibras de la misma madera. Esto en cuanto a la intervención que al principio aparecen tener los Quiñones y Almodóvar en la muerte que se persigue en este juicio.

De otra parte el acusado Ramón Matos y el otro Domingo Matos confesaron su delito bajo juramento ante diversas autoridades y se acusaban respectivamente habiendo además suministrado al fiscal datos para poder comprobar la veracidad de sus declaraciones tales como que con el dinero que habían tomado a don Nicolás Quiñones después de su muerte habían pagado ciertas deudas que tenían y habían comprado provisiones; que el palo con que acometieron primeramente al interfecto era de tachuelo y lo habían tirado en un sitio inmediato al sitio del suceso, donde efectivamente fué encontrado un palo de tachuelo; que una piedra con la que dijeron haberle causado golpes en la cabeza tenía efectivamente manchas de sangre humana y algunos cabellos adheridos parecidos a los del interfecto, según el examen microscópico que de ellos hicieron; que no solamente los dos acusados Matos confesaron su delito ante las autoridades judiciales sino que también el mismo día del crimen hicieron esa confesión a la hermana de uno de ellos llamada Francisca Matos y posteriormente a Carmelo Medina, cuñado de Domingo. De la prueba aparece también que el móvil inicial del crimen fué el vengarse de don Nicolás Quiñones porque los había despachado de la finca donde estaban y que él administraba y que estuvieron en acecho para matarlo.

Esas pruebas son bastantes, sin mencionar otras más que hay, para demostrar que es suficiente para sostener la conclusión del jurado respecto a la culpabilidad de Ramón y Domingo Matos, con mayor razón cuanto que el jurado no solamente oyó la prueba contra los Matos sino la que al prin-

cipio pareció haber contra los Quiñones y Almodóvar y a pesar de esto hizo la declaración contra los Matos.

El particular de este motivo de error de ser el veredicto contrario a derecho no está argumentado por el apelante pero ciertamente no existe.

Por último se alega que la corte inferior erró al dar las instrucciones al jurado, en los siguientes casos:

A. Cuando dice ''de modo que está probado porque se admitió así, que Don Nicolás Quiñones falleció dentro de un año y un día de haber recibido la causa de la muerte.''

B. Al no exponer al jurado las reglas existentes que se aplican para dirimir la prueba contradictoria.

C. Al omitir instrucciones específicas sobre homicidio y establecer por el contrario expresamente que los únicos veredictos que podía dar el jurado, de acuerdo con la prueba presentada en este caso, eran: asesinato en primer grado; asesinato en primer grado con atenuantes, y asesinato en segundo grado y no culpables.

D. Al omitir instruir al jurado que la confesión de Demetrio Quiñones estaba regulada por las mismas reglas que dió para que el jurado apreciara las confesiones de Ramón Matos y de Domingo Matos.

Respecto a la parte ''A'' la corte dió al jurado la instrucción de haber fallecido el Sr. Quiñones dentro de un año y un día de haber recibido la causa de la muerte porque la defensa admitió que dicho señor había fallecido el 28 de junio de 1915, siendo un hecho cierto que no pudieron haber sido inferidas las heridas un año y un día antes porque las heridas aparecieron ser recientes, el cadáver no estaba descompuesto y había prueba de que el mismo día 28 por la mañana estaba vivo. El hecho de que la corte dijera que había fallecido el Sr. Quiñones dentro de un año y un día de haber recibido la causa de la muerte no quiere decir, como entiende el apelante, que estuviera instruyendo al jurado con esas palabras que la muerte había sido recibida de manos extrañas como resultado de un acto criminal, pues la causa

de la muerte pudo no haber sido un acto criminal sino casual.

En cuanto al extremo "B" no puede quejarse ahora el apelante de que las instrucciones no fueron todo lo específicas que él desea respecto a la prueba contradictoria, puesto que habiendo tenido en su mano el remedio de solicitar del juez tal clase de instrucción, y el de presentarlas por escrito, no lo hizo y no es este el momento de atacarlas por insuficientes. *El Pueblo* v. *Robles,* 10 D. P. R. 496; *El Pueblo* v. *Boria,* 12 D. P. R. 171; *El Pueblo* v. *Laugier,* 14 D. P. R. 549; *El Pueblo* v. *Español,* 16 D. P. R. 215.

La queja que envuelve el motivo expuesto en la letra "C" carece de fundamento porque demostrando la prueba claramente que no se trataba de un delito de homicidio sino de un asesinato no tenía necesidad el juez de dar instrucciones referentes al homicidio. *El Pueblo* v. *Flores,* 17 D. P. R. 178; *El Pueblo* v. *Alméstico,* 18 D. P. R. 321; *El Pueblo* v. *Lasalle,* 18 D. P. R. 422.

D. Al expresar el apelante lo que consigna en este apartado parte de la base de que la declaración de Demetrio Quiñones es una confesión lo cual no es exacto porque al ser admitida en un juicio contra Ramón y Domingo Matos no podía serlo como confesión porque Demetrio Quiñones no estaba acusado de delito alguno en el juicio y por tanto era solamente la declaración de un testigo. De todos modos el acusado no pidió al juez que instruyera en la forma que él desea ahora.

Después de haberse dictado la sentencia en este caso por la que los dos acusados fueron condenados a sufrir la pena de muerte se promulgó en noviembre 30, 1917 la Ley No. 36 aboliendo la pena de muerte en Puerto Rico hasta el 30 de abril de 1921 y dándole efecto retroactivo aplicable a los reos condenados a muerte y cuya pena no hubiera sido efectuada. Y al enmendar el artículo 202 del Código Penal dispone que toda persona culpable de asesinato en primer grado será castigada con reclusión perpetua en el presidio. Así pues, haciendo aplicación de esta ley a Ramón Matos, puesto que

Domingo Matos ha fallecido, debe modificarse la sentencia apelada en el sentido de que dicho acusado sea condenado por el delito de asesinato en primer grado a sufrir la pena de reclusión perpetua en el presidio.

Con la expresada modificación debe ser confirmada la sentencia dictada contra Ramón Matos.

> *Confirmada la sentencia apelada pero modificada en el sentido de que el acusado sea condenado por el delito de asesinato en primer grado a sufrir la pena de reclusión perpetua en el presidio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados Wolf y del Toro.

El Juez Asociado Sr. Hutchison firmó conforme con la sentencia.