EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN LAMBOY TOLEDO, acusado y apelante.

No. 3386.—*Visto:* Diciembre 20, 1927 y Mayo 1, 1928.
*Resuelto:* Mayo 28, 1928.

*E. Martínez Avilés,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

Ramón Lamboy fué acusado de que en la noche del 18 de enero de 1927 voluntaria, ilegal y maliciosamente, intentó pegar fuego con intención de destruirla a una casa que Felipe B. Rivera tiene en la calle del Carmen del pueblo de Hatillo, que estaba habitada entonces por Ismael Sepúlveda y sus familiares; delito que está definido en el artículo 50 del Código Penal en relación con el 398 y 405 del mismo código referentes al delito de incendio, pues en el primero de los tres artículos citados se dice que a todo el que intente cometer un delito o fuere impedido o interceptado en la perpetración del mismo se le impondrá la pena que en él se especifica.

El acusado solicitó ser juzgado por un jurado pero después renunció ese derecho y quiso ser juzgado por la corte, la que después de celebrado el juicio lo declaró culpable del delito imputádole y lo condenó a dos años de presidio.

El primer motivo de error que alega el acusado en su apelación contra esa sentencia se funda en haber permitido la corte que el fiscal presentase en el juicio la declaración del acusado ante un juez de paz, sin haber probado previamente el *corpus delicti.*

De la prueba que el fiscal presentó en el juicio resulta que el 17 de enero de 1927 el acusado estuvo en el pueblo de Hatillo donde hizo que le enseñaran la casa que Felipe B. Rivera tiene allí; que al día siguiente como a las diez

y media de la noche pasó cerca de un guarda del ferrocarril que está inmediato al pueblo de Hatillo y que custodiaba la vía férrea, a cuyo guarda estuvo sospechoso por no ser vecino del pueblo y porque en vez de entrar en él por la carretera que lo cruza siguió la vía del ferrocarril llevando un bulto y desapareciendo en una alcantarilla, por lo que ese guarda dió aviso a la policía; que el acusado se metió debajo de una casa semialta habitada por Lucrecia Machado, casa que tiene su frente a la carretera que pasa por el pueblo y que está al lado de otra que hace esquina a la calle del Carmen; que al otro lado de la carretera, en la otra esquina a la calle del Carmen hay una casa que fué cine y que entonces era escuela, al lado de la cual está la de Felipe B. Rivera, que tiene frente a la calle del Carmen; que del patio de la casa de Lucrecia Machado a la casa de Felipe B. Rivera, habitada por Ismael Sepúlveda, es sólo cuestión de segundos, según declaró el colector de rentas internas; que de los bajos de Lucrecia Machado salió el acusado y trató de cruzar la carretera pero volvió para atrás al ver que una persona lo estaba mirando; que otra vez llegó hasta la escuela pero volvió a los bajos de la casa de Machado; que cuando varias personas avisadas por la policía fueron a detenerlo a eso de la una de la mañana en los bajos de la repetida casa, el acusado salió corriendo hasta una cerca de alambres del patio de esa casa, donde fué hecha su detención; que debajo de la casa donde él se había metido fué encontrado el bulto que portaba y que contenía una lata de gasolina, dos cajas de fósforos, un pedazo de pan y una botella con un poco de ron.

Después de esa prueba el fiscal presentó la declaración que el acusado prestó ante el juez de paz de Hatillo en la mañana del día en que fué detenido, en la que declaró que la noche anterior llegó a Hatillo a eso de las doce procedente del barrio de los Angeles de Utuado, después de cruzar varios caminos, y fué a buscar un saco que contenía un galón de

gasolina que tenía escondido en la orilla del camino que va para Arecibo, dentro de unas cepas de maya, desde el día anterior; que fué con la intención de pegarle fuego a una casa de Felipe B. Rivera en la calle del Carmen de Hatillo, mandado por Felipe B. Rivera, quien le ofreció pagarle cincuenta pesos después que realizara ese hecho y quien le dió un dólar anticipado para que comprara gasolina y cualquiera otra cosa que fuera necesaria; que no realizó ese hecho por miedo y por haber sido sorprendido por un policía y otras personas debajo de una casa, de la que corrió y lo cogieron a corta distancia, siéndole ocupada una lata de gasolina, dos cajas de fósforos, un cortaplumas y un frasco con ron.

En Wigmore sobre Evidencia, segunda edición, tomo 4, página 405 y siguientes, puede verse la historia de la regla que requiere prueba del *corpus delicti* independientemente de las manifestaciones y confesiones del acusado hechas antes del juicio con referencia al delito que se le imputa. Nosotros hemos declarado en los casos de *El Pueblo* v. *Rosado,* 17 D.P.R. 441, y *El Pueblo* v. *Matos y Matos,* 26 D.P.R. 594, ambos por asesinato, que la confesión del acusado hecha antes del juicio no puede admitirse como prueba contra él si la existencia del *corpus delicti* no ha quedado establecida por prueba de otra naturaleza, diciendo además en el segundo de esos casos que los elementos del *corpus delicti* son la prueba de la muerte de un ser humano causada por manos extrañas a las suyas, y ser equivocada la idea de que la culpabilidad del acusado forma parte del *corpus delicti.* En el mismo sentido que nuestras decisiones citadas se han escrito las opiniones en *People* v. *Simonsen,* 107 Cal. 345, 40 Pac. 440; *People* v. *Ward,* 145 Cal. 736, 79 Pac. 448, y *Pierson* v. *State of Alabama,* 79 So. 447, que cita el de *Ryan* v. *State,* 100 Alabama 94, 14 So. 868.

Esa regla ha sido declarada en los casos citados porque se trataba de delitos consumados en los que necesaria-

mente tiene que existir el *corpus delicti,* ya sea una persona muerta violentamente, una casa quemada voluntariamente o propiedad ajena sustraída, pero no puede tener aplicación cuando sólo se ha intentado cometer un delito porque entonces no existe el hecho de la muerte, del incendio o del hurto; y como en el caso presente la acusación imputa el haber intentado quemar una casa, no podía ser probado un *corpus delicti* que no podía existir. No obstante, las cortes americanas declaran que la confesión del acusado hecha extrajudicialmente, esto es, fuera del tribunal que lo juzga, necesita alguna corroboración, que existe en la prueba del fiscal en este caso pues de ella aparece que el acusado estuvo en Hatillo el día antes de la noche en que fué detenido haciéndose enseñar la casa de Felipe B. Rivera, y que se le ocupó una lata con gasolina que llevaba escondida dentro de un saco, que puede servir para producir un incendio, por lo que en tales condiciones la prueba del fiscal era admisible en cuanto a la confesión prestada por el acusado. Además, como luego veremos, el acusado solicitó declarar en el juicio y confesó su delito.

■■ Se alega como segundo motivo para la apelación que hubo error en la apreciación de la prueba. Ya hemos expuesto la presentada por el fiscal. Después de ella el acusado solicitó declarar y dijo en el juicio que vive en el barrio de Angeles de Utuado: que no conocía el pueblo de Hatillo en el que solamente ha estado el 17 y 18 de enero, en la noche en que ocurrieron los sucesos: que el policía de Utuado Felipe B. Rivera hacía como un año que le decía que tenía en Hatillo una casa clausurada que nada le producía ni encontraba hacer negocio con ella: que su seguro vencía el 19 de enero a las cuatro de la tarde y que el acusado tenía que hacerle un trabajo en ella: que el 16 de enero el policía lo vió otra vez e insistió en que fuera a Hatillo: que el lunes 17 por el día fué a ese pueblo para que le mostraran la casa, fingiendo que tenía que hacerle un trabajo de carpintería: que

el 18 por la noche volvió a Hatillo, habiéndole dicho Rivera que lo esperara a las diez u once de la noche, y viendo que no llegaba pensó en retirarse: que él cruzaba de la casa en que estaba metido a la carretera para ver si pasaba un carro que lo condujera a su barrio. A repreguntas del fiscal contestó que Felipe B. Rivera le dió un dólar para que comprara una lata con gasolina y que recuerda haber declarado al fiscal que Rivera le ofreció cincuenta dólares para que pegara fuego a su casa: que para eso fué a Hatillo: que la gasolina y los fósforos los compró para quemar esa casa. El otro testigo de la defensa fué Balbina Torres, que parece que vivía con el acusado, pues dice que el 16 de enero estuvo en su casa Felipe B. Rivera y dijo a Lamboy qué pensaba de lo que habían hablado y como le contestara que nada había resuelto le dijo que fuera al cuartel para acabar de tratar el asunto, y lo obligó diciéndole que si se pasaba aquel día le costaría otra cosa: que Lamboy fué al cuartel y regresó por la tarde. A repreguntas del fiscal dijo que Lamboy fué a Hatillo a hacer un trabajo, oyendo que se trataba de quemar una casa de Felipe B. Rivera que estaba asegurada y para él cobrar.

La prueba del fiscal y la declaración del acusado en el juicio son suficientes para sostener la sentencia condenatoria, pues aunque la sola intención de cometer un delito no es penable sin la ejecución de algún acto tendente a la realización de la intención criminal aunque ésta no llegue a realizarse por completo por actos independientes de la voluntad del agente; aunque el hecho de reunir los elementos para cometer el delito es considerado meramente como acto preparatorio y necesita algún acto tendente a la ejecución para que la tentativa de cometer un delito sea penable; y aunque el desistimiento voluntario y libre de una intención criminal impide la pena, sin embargo, el caso presente no se halla en ninguna de esas situaciones porque después de los actos preparatorios del acusado, como el haber estado el día anterior

en el pueblo de Hatillo para conocer la casa que intentaba quemar y el de haber comprado gasolina y fósforos, el acusado ejecutó actos tendentes a la realización del delito de incendio de dicha casa, pues volvió al pueblo de Hatillo tarde en la noche llevando consigo gasolina y fósforos; se escondió en los bajos de una casa tan cercana a la de Felipe B. Rivera que podía salvar la distancia entre ellas en segundos; y sobre todo, intentó varias veces llegar hasta la casa que fué a quemar, habiendo llegado hasta la próxima a ella, y si no prendió fuego a la expresada casa fué porque vió que lo estaban observando y porque lo detuvieron. Es cierto que el acusado declaró que desistió de su propósito por temor y porque no llegó Felipe B. Rivera a quien estaba esperando, y que salía a la carretera para ver si pasaba algún carro que lo llevara a su barrio, pero la condena de la corte demuestra que no dió crédito a ese particular de su declaración, en lo que estuvo justificada pues aparte de que parece muy dudoso que a esas horas salieran carros de dicho pueblo para el barrio del acusado, si tal era su propósito parecía lo más natural que hubiera esperado en la carretera y no escondido debajo de una casa. Pero, independientemente de lo expuesto, para que exista un desistimiento (*locus poenitentiae*) de la intención se necesitan actos que demuestren tal desistimiento. En la obra de Wharton sobre ley criminal, tomo I, pág. 215, tratando sobre la cuestión de que no debe ser castigada la persona que desista voluntaria y libremente de su intención criminal, dice lo siguiente:

"Es sabido, sin embargo, que como la tentativa (*attempt*) puede probarse solamente por algún acto tendente a la realización del delito (*overt act*), de igual modo el abandono de la tentativa no puede ser probado por meras conjeturas o por declaraciones de un cambio mental. Como el declarar una intención de hacer una cosa no es una tentativa penable, de igual modo la declaración de una intención de abandonar la tentativa tampoco es un abandono de tal tentativa. Si fuera de otro modo, tentativas criminales, especialmente políticas, dejarían de ser penables porque hay pocos casos en los

cuales el acusado no alegaría que desistió de su intención criminal. Deben haber actos tendentes a demostrar que en realidad hubo tal abandono, al igual que deben haber actos reales demostrativos de que en verdad hubo la tentativa. Debe también recordarse que si tal abandono es causado por el temor de ser detenido, ello no constituye defensa alguna, si la tentativa llegó a tal punto de ser ejecutada que sería penable *per se* antes de ser abandonada. Por ejemplo, si un ladrón dirige su mano hacia el bolsillo de otra persona y desiste al ver un policía (*detective*), el delito se ha cometido.

■ El tercer error señalado es por no haberle sido concedido un nuevo juicio al acusado por nueva prueba descubierta, consistente en el hecho de que después de este juicio y antes de dictarse sentencia en él fué condenado Felipe B. Rivera por haber aconsejado al apelante que pegara fuego a su casa; pero el hecho de que la persona que aconsejó un crimen haya sido condenada no exime de responsabilidad al que haya participado en el mismo aunque sea en grado de tentativa.

■ El cuarto y último error es porque la pena impuesta es excesiva, pero como el apelante deja de argumentar ese motivo para demostrar las razones por las cuales la pena resulta excesiva en este caso concreto, dejaremos de considerar tal motivo.

*La sentencia apelada debe ser confirmada.*

El Juez Asociado Sr. Hutchison firmó conforme con la sentencia.