EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOSÉ RIVERA MÁRQUEZ, acusado y apelante.

Número 15423–24.

*Sometido:* 1 de octubre de 1953. *Resuelto:* 28 de octubre de 1953.

*Mario Báez y García,* abogado del apelante; *Hon. Secretario de Justicia Interino Juan B. Fernández Badillo* y *Jaime García Blanco, Fiscal Especial, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del tribunal.

El apelante fué declarado culpable de homicidio voluntario por un jurado ante la Sección de Mayagüez, del anterior Tribunal de Distrito de Puerto Rico. Dicho tribunal también le declaró culpable de una infracción a la sección 8 (*felony*) de la Ley de Armas de Puerto Rico. Ha apelado de las sentencias impuéstasle en ambos casos. En cuanto al caso de portar armas alega, en primer lugar, que el tribunal sentenciador cometió error manifiesto al no concederle el derecho a un juicio por jurado. No tiene razón. De los autos surge que en el acto de la lectura de la acusación por

el delito de portar armas la corte declaró sin lugar una solicitud del acusado para que el juicio se celebrara ante un jurado.

 Los hechos imputados al apelante ocurrieron el día 13 de mayo de 1951. El juicio por infracción a la Ley de Armas se celebró el día 21 de julio de 1952 y la sentencia fué dictada al día siguiente. Por tanto no es de aplicación a este caso la disposición constitucional que garantiza al acusado un juicio por jurado en los procesos por delito grave.[1] Sin embargo, el acusado insiste en que tenía tal derecho bajo las disposiciones de la propia Ley de Armas.

El artículo 33 de la Ley núm. 17 de 19 de enero de 1951 (Ley de Armas de Puerto Rico), dispone lo siguiente:

"Artículo 33.—El Tribunal de Distrito de Puerto Rico y el Tribunal Municipal de Puerto Rico tendrán jurisdicción concurrente para conocer de todos los delitos menos grave (*misdemeanor*) definidos y castigados por esta Ley. El Tribunal de Distrito tendrá jurisdicción exclusiva para conocer de todos los delitos graves (*felonies*) definidos y castigados por esta Ley. Todos los casos que se ventilen ante el Tribunal de Distrito lo serán por tribunal de derecho."

El apelante arguye que al decir la ley "Todos los casos que se ventilen ante el Tribunal de Distrito lo serán por tribunal de derecho", se refiere únicamente a todos los casos por delitos menos grave (*misdemeanors*) y no a los casos por delito grave (*felony*). No encontramos base alguna para hacer tal distinción. La ley confiere jurisdicción concurrente a ambos tribunales para conocer de todos los delitos menos grave (misdemeanors) y jurisdicción exclusiva al Tribunal de Distrito, hoy Superior, para conocer de todos los delitos graves (*felonies*) y luego dispone que *todos los casos*

---

[1] La Constitución del Estado Libre Asociado de Puerto Rico entró en vigor el día 25 de julio de 1952, o sea, con posterioridad a la fecha en que fué sentenciado el apelante. El segundo párrafo de la Sección 11 de dicha Constitución provee en parte lo siguiente: "En los procesos por delito grave el acusado tendrá derecho a que su juicio se ventile ante un jurado imparcial ....."

que se ventilen ante el Tribunal de Distrito lo serán por tribunal de derecho. No distinguió la ley entre delitos graves y menos grave. El adverbio *todos* incluye unos y otros. Tiene razón el Fiscal de este Tribunal al afirmar que si se quería limitar el alcance al adjetivo "todos" en la forma que pretende el apelante, no hay duda se hubiera intercalado la palabra *"misdemeanor"* a continuación de la frase "todos los casos," de manera que leyera "en todos los casos *misdemeanors,* etc." Si no lo hizo el legislador, tampoco debemos hacerlo nosotros. Concluímos por lo tanto que al decir la ley "todos los casos que se ventilen ante el Tribunal de Distrito lo serán por tribunal de derecho" dispuso que los casos por delito grave se verían por tribunal de derecho y no ante un jurado.[2] *Cf. Rivera* v. *González, Alcaide de Cárcel,* 71 D.P.R. 668 y *Pueblo* v. *Portalatín,* 72 D.P.R. 152.

▮▮▮ El apelante también ataca la suficiencia de la acusación por portar armas. En dicha acusación se alega sustancialmente que "El referido acusado, José Rivera Márquez allá en por (sic) el día 13 de mayo de 1951 y en Cabo Rojo, Puerto Rico, . . . ilegal, voluntaria y maliciosamente, portaba sobre su persona, para fines de ofensa y defensa, sin tener una licencia para portar armas, un revólver cargado de balas, que es un arma mortífera con el cual puede causarse grave daño corporal . . ."

Esa acusación contiene todos los elementos del delito definido en el artículo 8 de la Ley de Armas. Dicho artículo dispone lo siguiente:

"Artículo 8.—Toda persona que porte, conduzca o transporte cualquier pistola, revólver o cualquier otra arma de fuego cargada, o que porte, conduzca o transporte cualquier pistola, revólver, o cualquier otra arma de fuego y al mismo tiempo porte, conduzca o transporte municiones que puedan usarse para disparar tal pistola, revólver u otra arma de fuego, sin tener una licencia para portar armas expedida según más adelante se dispone, será culpable de delito grave (*felony*)."

[2] Es incuestionable que nuestra Legislatura tenía facultad para legislar en esa forma. *Rivera* v. *González, Alcaide de Cárcel,* supra.

El apelante arguye que en esa acusación falta la alegación de que el acusado no era una de las personas que por ministerio de la ley podían portar o transportar armas. En otras palabras, como el artículo 20 de dicha ley dispone que podrán tener, poseer, portar, transportar. y conducir armas legalmente determinadas personas que enumera, tales como algunos funcionarios de los gobiernos insular y federal y las personas a quienes la Corte de Distrito, hoy Superior, conceda licencia para ello, el apelante sostiene que en la acusación ha debido de alegarse que él no es una de esas personas. El argumento es frívolo. Admitiendo que el artículo 20 constituya una excepción al delito definido en el artículo 8, el lenguaje que define dicho delito es tan independiente de la excepción, que el delito puede ser descrito con certeza y exactitud sin necesidad de negar la excepción y en ese caso ésta se considera como materia de defensa y como tal debió haber sido alegada y probada por el acusado. *Pueblo* v. *García*, 42 D.P.R. 142; *Pueblo* v. *Avilés*, 54 D.P.R. 272; *Cf. Pueblo* v. *Rivera*, 73 D.P.R. 440.

█ En cuanto al caso de homicidio voluntario alega el apelante que el veredicto es contrario a la prueba y a derecho. También alega que en el caso de portar armas el juez sentenciador cometió error al apreciar la prueba.

Tampoco le asiste la razón. La prueba del Pueblo, creída por el jurado y por el juez, demostró que en la tarde del domingo 13 de mayo de 1951—Día de las Madres—varias niñitas bailaban con la música de una "vellonera" en la parte posterior de un pequeño establecimiento propiedad de Néstor Rivera, hermano del acusado apelante, sito dicho establecimiento en el barrio Guanajibo, sitio Cerrillo de Cabo Rojo, Puerto Rico. En el frente de dicho negocio se expendían bebidas y refrescos a los allí presentes por sobre un mostrador del que formaba parte la vellonera. En aparente estado de embriaguez llegó allí Santiago Marrero Troche solicitando se le sirviera licor. Complacido en una o dos ocasiones se molestó cuando Néstor Rivera se negó a seguirle

sirviendo y entonces Santiago Marrero Troche interrumpió la música en varias ocasiones interviniendo con algún mecanismo de la "vellonera". Néstor Rivera, desde la parte de atrás del mostrador le agarró por la camisa y le golpeó con el puño sobre el ojo derecho. Acto seguido Marrero Troche sacó de uno de sus bolsillos una cuchilla plegadiza, la abrió e instaba a su agresor a salir afuera mientras golpeaba la "vellonera" con la cuchilla. Mientras tanto Néstor Rivera seguía atendiendo a su negocio. En ese momento llegó el acusado y apelante José Rivera Márquez, quien desde el camino vecinal que cruzaba frente al kiosko y armado de un revólver, preguntó, ¿qué pasa con mi hermano? a la vez que ordenaba a todo el mundo que se quitara. Cuando Marrero Troche, quien continuaba de espaldas al camino vecinal dándole golpes y empujando la "vellonera", se volvía para dar frente a su interlocutor, éste le hizo un disparo de revólver hiriéndole en el pecho. Marrero Troche pronunció unas palabras(3) y caminaba hacia un banco de bambú cuando el acusado le hizo dos disparos más, cayendo herido mortalmente y falleciendo en aquel mismo sitio.

Ante nos alega ahora el apelante que al dar muerte a Marrero Troche lo hizo en defensa propia y en defensa de su hermano Néstor Rivera. Mas no fué así. La prueba de cargo demostró que cuando el acusado llegó al establecimiento de su hermano, el interfecto Marrero Troche no atacaba a persona alguna. Además el propio acusado, en la vista del caso manifestó ignorar lo que pudiera haber ocurrido entre su hermano y el interfecto. Por otro lado, el récord demuestra que la verdadera teoría de defensa planteada por el acusado fué la de la defensa propia. El fiscal de esta corte la resume correctamente así:

"La defensa sostuvo que, en aquella tarde, el acusado volteaba sus propiedades de caña (T.E. 114). De regreso a su

---

(3) Según un testigo de cargo Marrero Troche dijo, "Acábame de matar". Otro de los testigos pone en boca del herido estas palabras "Pepín, ¿qué tú has hecho?"

casa, atraído por la gritería que procedía del kiosko, se dirigió hacia allí, donde inmediatamente se le enfrentó Santiago Marrero Troche injuriándole y preguntándole qué venía a buscar (T.E. 115, 116). Al verle avanzar hacia él, cuchillo en mano, José Rivera Márquez hizo un disparo al aire con el fin de amedrentarle (T.E. 117). Al continuar aquél avanzando fué entonces que, como última providencia, disparó contra el que así le amenazaba (T.E. 117 y 118). El acusado, en la vista del caso, manifestó ignorar lo que pudiera haber ocurrido entre su hermano y el interfecto. (T.E. 124 y 125). Alega haber disparado desde la colindancia de su propiedad aunque dentro de lo que coge el kiosko (T.E. 124)."

Tal teoría está en franco conflicto con la teoría del ministerio público. El jurado, sin embargo, dirimió el conflicto en contra del acusado rechazando su teoría. No hay base alguna para alterar su veredicto.

■ Tampoco incurrió en error el juez sentenciador al apreciar la prueba en el caso por portar armas. Los testigos de cargo declararon que el acusado cruzó un camino público para ir al kiosko de su hermano, portando un revólver cargado de balas. El acusado admitió que no tenía licencia para portar armas. Tales hechos, por tanto, constituyen el delito definido en el artículo 8 de la Ley de Armas.

■ Aunque el apelante imputa también a la corte sentenciadora haber incurrido en pasión y prejuicio al apreciar la prueba, no discute ese error en su alegato. En consecuencia no venimos obligados a considerarlo. *Pueblo* v. *Lamboy*, 38 D.P.R. 230; *Khon v. Martínez*, 40 D.P.R. 40, y debe considerarse como abandonado. *Sucn. González* v. *Fed. Land Bank,* 51 D.P.R. 469; *De Jesús* v. *Assad*, 63 D.P.R. 137; *Pueblo* v. *Park Distilled Products Co., Inc.*, resuelto *per curiam* en mayo 2 de 1953.

*No existiendo los errores señalados se confirmarán las sentencias apeladas.*

El Juez Asociado Sr. Marrero no intervino.