EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* EDWIN RIVERA RÍOS, acusado y apelante.

Núm. 11745.—*Sometido:* Febrero 12, 1947. *Resuelto:* Mayo 2, 1947.

Buenaventura Esteves, abogado del apelante; Hon. Procurador General Interino Luis Negrón Fernández, y Joaquín Correa Suárez, Fiscal Auxiliar del Tribunal Supremo, abogados de El Pueblo, apelado.

El Juez Asociado Señor de Jesús emitió la opinión del tribunal.

El apelante fué sentenciado a un mes de cárcel por un delito de escalamiento en segundo grado. El delito consistió en que el 7 de septiembre de 1945, como a las cinco de la tarde, en San Sebastián, P. R., el apelante, voluntaria y maliciosamente, con intención de cometer hurto o ratería, penetró en un edificio dedicado a comedor escolar, del cual sustrajo tres latas de oleomargarina, pertenecientes a dicho comedor, valoradas en $2 cada una.

Conforme resulta de los autos, el comedor escolar fué cerrado por la matrona como a las tres de la tarde del día 7 de septiembre de 1945, y al día siguiente, por la mañana, apareció abierto. Investigadas las existencias se notó que faltaban tres latas de oleomargarina, las cuales había marcado la matrona con unas rayas en cruz. Tres o cuatro días después, Eduardo López, un comerciante de la localidad, entregó al jefe de la policía una de dichas latas ya vacía, manifestándole que en la tarde del 7 de septiembre la había comprado al acusado llena de oleomargarina, por 85 centavos. También Genaro Quiñones entregó a la policía otra, informando que al oscurecer del día 7 de septiembre la había comprado al acusado por un dólar. Y la tercera fué vendida por el acusado a Antonio González, el 8 de septiembre, como a las tres de la tarde. Las tres latas fueron identificadas por la matrona del comedor escolar, encontrando en cada una de ellas la marca que le había puesto. Conducido el acusado

al cuartel de la policía, negó al principio haber tenido participación alguna en el caso; pero al mostrársele las latas, admitió que las había hurtado. Conducido a la presencia del juez municipal, declaró que como a las cinco de la tarde del 7 de septiembre, valiéndose de un alambre, había abierto una ventana y penetrado en el edificio sustrayendo las tres latas de oleamargarina, una de las cuales había vendido a Genaro Quiñones y las dos restantes a Antonio González.

A preguntas del fiscal y con la oposición de la defensa, el testigo Genaro Quiñones declaró que al serle ofrecida en venta la lata de oleomargarina, preguntó al acusado sobre la procedencia de ésta, recibiendo la siguiente contestación: "Eso lo recibimos nosotros de Aguadilla de un familiar que nosotros tenemos en Aguadilla."

█ Arguye el apelante que incurrió la corte *a quo* en error perjudicial al admitir esa manifestación del testigo, porque no fué voluntariamente hecha por el acusado; que esa manifestación, aunque en nada incrimina al acusado, fué hecha en contestación a una pregunta que le hizo el testigo Quiñones, y que por consiguiente no fué voluntaria.

Ese señalamiento de error carece de mérito. Como muy bien dice la defensa, esa manifestación no incrimina al acusado. Se trata de una manifestación exculpatoria, no de una confesión. La ley no requiere que se pruebe que las manifestaciones exculpatorias han sido hechas voluntariamente.

██ Sostiene el apelante que la parte de la declaración del policía José Pagán, relativa a la confesión que hizo el acusado en el cuartel, era inadmisible por no haberse establecido el *corpus delicti*. Precisamente, el primer testigo del fiscal fué la matrona Ana Mercado, quien, como hemos visto, declaró que como a las tres de la tarde había cerrado el comedor escolar, luego de cerciorarse que todo estaba en orden y al día siguiente encontró que el local había sido abierto, que faltaban tres latas de oleomargarina e identificó las que le mostraron en el cuartel como las tres que faltaban en el

comedor escolar. Esa declaración dejó perfectamente establecido el *corpus delicti*. No era indispensable que el fiscal probase con evidencia directa que alguien penetró en el local. La prueba circunstancial estableció claramente que un agente criminal había penetrado en el local y sustraído la oleomargarina, pues las latas no podían salir de allí si alguien no las sacaba. Además, las declaraciones de los tres testigos a quienes el acusado vendió la oleomargarina, juntamente con la confesión del acusado, en el cuartel primero y ante el juez municipal después, dejaron establecido que el agente criminal fué el acusado.

Arguye, por último, el apelante, que la confesión que hizo en el cuartel fué obtenida por medio de la violencia; que le dieron bofetadas y que lo agredieron con un foete por la espalda y que con motivo de las lesiones recibidas estuvo nueve días de cama.

La tortura que alega haber sufrido el acusado fué negada enfáticamente por el policía Pagán y por el jefe de la policía. Además, a preguntas del fiscal, el acusado declaró que a pesar de tener que guardar cama por nueve días, no se le ocurrió llamar un médico, si no para que lo asistiera, por lo menos para que acreditara las lesiones.

También alega el apelante que la declaración que prestó ante el Juez Municipal fué obtenida por el miedo, porque mientras declaraba, el jefe de la policía se hallaba detrás de él y le tocaba con el foete por la espalda, impidiéndole así declarar voluntariamente por temor a que volvieran a conducirlo después al cuartel y lo torturaran de nuevo.

En relación con esta manifestación del acusado, parece pertinente consignar que quedó concluyentemente probado que mientras el acusado declaraba ante el juez municipal, se hallaban presentes el policía Pagán, el secretario de la corte municipal y el propio padre del acusado, quien estaba parado frente a la puerta de la corte, la cual estaba entreabierta y desde donde podía observar lo que sucedía mientras se tomaba declaración a su hijo. Ningún testigo declaró que ob-

servara tal conducta por parte del jefe de la policía. Por el contrario, esa imputación fué negada por la policía, y el juez de distrito no dió crédito al acusado.

Por último, se imputa al juez que actuó movido por pasión, prejuicio y parcialidad. Los autos, lejos de revelar tal pasión, prejuicio y parcialidad, lo único que revelan es que el juez fué muy benigno con el acusado al imponerle un mes de cárcel por este delito.[1]

*Procede la confirmación de la sentencia.*

---

[1] Atribuimos la benevolencia del juez al hecho de que el acusado tenía de 16 a 17 años de edad cuando cometió los hechos delictivos y era entonces estudiante de octavo grado en las escuelas públicas de San Sebastián.