EL PUEBLO DE PUERTO RICO, demandante y apelado *v.* JUAN DE JESÚS HUERTAS, acusado y apelante.

Núm. 15268.—*Sometido:* Septiembre 1, 1952.   *Resuelto:* Septiembre 17, 1952.

*Guillermo S. Pierluisi*, abogado del apelante; *Hon. Procurador General Víctor Gutiérrez Franqui (Juan B. Fernández Badillo, Procurador General Interino,* en el alegato) y *J. Rivera Barreras, Fiscal del Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

Juan de Jesús Huertas fué acusado y convicto por el extinto Tribunal de Distrito de Bayamón de una infracción a la sección 10 de la Ley núm. 220, aprobada en 15 de mayo de 1948 ((1) pág. 739), conocida como la Ley de la Bolita. Anteriormente, y a virtud de una orden de allanamiento, se había allanado la casa residencia del acusado, y al ser diligenciada la misma se ocupó en poder de Pedro López, quien se encontraba en la casa, una bolsa conteniendo material de bolita.

Cinco días antes de iniciarse el juicio el acusado radicó una moción impugnando la validez del allanamiento practicado, que resultó en la ocupación y presentación posterior en evidencia, del material de bolita ya mencionado. Se discutió tal moción el día en que se celebró el juicio y antes de iniciarse la presentación de la prueba. El tribunal a quo la declaró sin lugar y acto seguido se procedió al desfile de la prueba presentada por el ministerio público, no habiendo el

acusado practicado prueba de clase alguna. El tribunal inferior declaró convicto al acusado y este último ha apelado ante este Tribunal. Alega el acusado que el tribunal a quo erró al declarar sin lugar su moción de impugnación del allanamiento y al resolver que la prueba presentada por el ministerio público era suficiente para declarar culpable al acusado.

■ El 20 de agosto de 1951 el Cabo de la Policía Insular, José M. Padilla, presentó en el antiguo Tribunal Municipal de San Juan una declaración jurada que decía en parte lo siguiente:

"En San Juan, Puerto Rico, a los 20 días del mes de agosto de mil novecientos cincuenta y uno, ante esta Corte comparece José M. Padilla, Cabo, P. I., mayor de edad, vecino de Guaynabo, Puerto Rico y previo juramento conforme a la ley dice:

"Mi nombre y demás circunstancias personales son las arriba mencionadas.

"Conozco personalmente a John Doe, trig. como de 45 años, delgado, de estatura regular, conocido por Juande.

"Me consta de conocimiento propio que reside en el Barrio Pájaro de Bayamón, sitio la Aldea, a la orilla de la carretera que conduce de Bayamón a Comerío, en el kilómetro 2, Hm. 9 de dicha carretera en el lado izquierdo yendo de Bayamón hacia Comerío en una casa de su propiedad de una sola planta construída de concreto, techada de concreto, la cual tiene medio balcón hacia el frente, una puerta de entrada por el medio balcón, y una ventana por el frente también, tiene esta casa tres ventanas por cada lado y la cocina hacia el fondo, la cocina tiene dos puertas de entrada una por cada lado, esta casa tiene las ventanas pintadas de *brown* obscuro, las paredes del medio balcón están pintadas de verde, tiene un bota aguas de tejas de color rojo sobre el medio balcón, colinda esta casa por el frente con la carretera que conduce de Bayamón a Comerío, donde marca el Km. 2 Hm. 9 al 10, por el lado izquierdo entrando de frente colinda con un solar donde existe escombros de una casa de concreto vieja y un árbol grande de mango, por el lado derecho entrando de frente hay un árbol de almendro bien cerca de la casa y un solar grande sin casa, por el fondo con el patio de dicha casa y finca.

"Ayer 19 de agosto de 1951, en una de las horas de la mañana ví a John Doe trig. como de 45 años de edad, delgado, de estatura regular, conocido por Juande, en su casa residencia manipular con listas de papel con números apuntados para el juego ilegal de la bolita, las que ví que guardó dentro de su casa residencia arriba descrita."

El mismo día 20 de agosto de 1951 un Juez de dicho Tribunal Municipal de San Juan expidió la correspondiente orden de allanamiento, la parte dispositiva de la cual decía lo siguiente:

"HALLANDO ESTA CORTE en la forma arriba expresada que existe causa probable de que John Doe, trigueño, como de 45 años de edad, delgado, de estatura regular, conocido por Juande, dentro de su casa residencia arriba descrita, ubicada en el Bo. Pájaro de Bayamón, sitio la Aldea, a orillas de la carretera que conduce de Bayamón a Comerío, en el Km. 2, Hm. 9 al 10, de la referida carretera manipula, tiene y guarda material de bolita, consistente en listas de papel con números apuntados para el juego ilegal de la Bolita, violando así la Ley núm. 220 de mayo 15 de 1948, según enmendada, se le ordena por tanto que durante las horas del día o de la noche proceda lo más pronto posible al registro de la casa residencia de John Doe arriba descrita, ubicada en el Bo. Pájaro de Bayamón, sitio la Aldea, en busca de material de Bolita, consistente en listas de papel con números apuntados para el juego ilegal de la Bolita, dinero producto de colectas del juego ilegal de la Bolita y cualquiera otros objetos y enseres que se estén usando en el juego ilegal de la Bolita, y si fueren por usted hallados y ocupados los traiga lo más pronto posible a mi presencia en el sitio, forma y modo ordenados por Ley.

"DADA BAJO MI FIRMA, HOY DÍA 20 de agosto de 1951.

"Firmado: José Pablo Morales, Juez del Tribunal Municipal de Puerto Rico, Sección de San Juan, Sala 2."

El diligenciamiento de la orden de allanamiento decía:

"Yo, José M. Padilla, *Certifico:* que el día 25 de agosto de 1951, de acuerdo con la orden que aparece al otro lado de esta hoja de papel procedí al registro de la casa residencia de JUAN DE JESÚS, conocido por Juande, ubicada en el Bo. Pájaro de Bayamón, sitio la Aldea, en presencia de Don Luis M. Pérez, y de Don Juan A. González en busca de material de Bolita, ocu-

pándole dentro de dicha casa al individuo Pedro López, residente en Bayamón una funda de papel conteniendo ésta numerosas listas de papel con números apuntados para el juego ilegal de la Bolita, en momentos que se la entregaba a Juan de Jesús, conocido por Juande, dueño de la casa allanada. La casa fué minuciosamente registrada por los agentes que cumplimentaron la orden pero no se pudo encontrar en ella ningún otro material de Bolita, excepto el indicado arriba. El material de Bolita referido fué ocupado por el Teniente Salvador Ríos, quien participó en el diligenciamiento de dicha Orden.

"Firmado: José M. Padilla, Cabo P. I.

"Yo, José M. Padilla, agente de la Autoridad, por quien fué ejecutada esta orden de allanamiento, Juro que el inventario que precede, contiene una verdadera relación de las prendas por mí encontradas en cumplimiento de dicha orden.

"Firmado: José M. Padilla

"Jurada ante mí en este día 30 de agosto de 1951.

"Firmado: José Pablo Morales

Juez del Tribunal Municipal de Puerto Rico."

Se alega, en primer término, por el apelante, que la orden de allanamiento autorizaba el registro de la casa del acusado durante las horas del día o de la noche y, bajo las disposiciones del artículo 511 del Código de Enjuiciamiento Criminal, ello se puede hacer solamente si de la declaración jurada correspondiente se desprende la completa seguridad de que la prenda que se busca se encuentra en el lugar que ha de ser registrado. En el diligenciamiento de la orden de allanamiento no se indica si el registro se verificó de día o de noche, pero en el curso del juicio se informó que había sido verificado de noche.

El ya mencionado artículo 511 provee que en la orden de allanamiento podrá indicarse que el allanamiento se verifique de día o de noche si las declaraciones juradas que le sirven de base a la orden están positivamente seguras de que las prendas que se buscan se encuentran en el lugar que ha de ser registrado.

En el caso de *Pueblo* v. *Negrón*, 72 D.P.R. 882, 885, se indica que tal requisito del artículo 511 queda debidamente

cumplido si el deponente está "positivamente seguro" del lugar en que se encuentran los objetos envueltos en el propuesto allanamiento cuando tuvo conocimiento de los hechos. Realmente, la seguridad a que se refiere el artículo 511 no es solamente en cuanto al lugar donde están los objetos sino que implica la seguridad del hecho en sí de que las prendas están en tal lugar. En el caso de autos surge de la declaración jurada del cabo Padilla que él estaba positivamente seguro de que las prendas estaban en la casa residencia del acusado. *Pueblo* v. *Negrón,* supra; *Pueblo* v. *Tonje,* 71 D.P.R. 317 y *Pueblo* v. *Yulfo,* 71 D.P.R. 820.

■■ Alega el apelante que del diligenciamiento practicado no surge que se hubiese practicado la ocupación de evidencia en la casa en sí del apelante, sino que el material de bolita se ocupó en la persona de Pedro López, no habiendo orden de registro alguna en cuanto a éste último. En *Pueblo* v. *Rodríguez,* 70 D.P.R. 514, se resolvió que librada una orden de allanamiento para registrar la casa de una persona, de ocuparse a otra persona, que salía corriendo de la casa en el momento del registro, la prueba que se buscaba—material de bolita—es válida la ocupación de tal evidencia. Se dice en la opinión:

"Si el registro efectuado en este caso no se sostuviera como legal, se burlarían la mayor parte de los allanamientos, pues fácilmente podrían sacarse del local que se trata de registrar en el momento en que se realiza el registro, el material ilegalmente poseído . . ."

En este último caso la persona que salía corriendo con un bulto en la mano, conteniendo material de bolita, fué la persona acusada y la que impugnó el registro y ocupación de evidencia. El *ratio dicidendi* del caso contiene dos elementos: (1) que el registro de esa persona fué legal, ya que ella estaba tratando de huir portando ilegalmente material de bolita y (2) debe sostenerse la validez del registro para hacer menos probable las evasiones a las órdenes de allanamiento. La situación envuelta en el caso de autos es algo distinta a la

planteada en el de *Pueblo* v. *Rodríguez*, supra. Aquí, el acusado alega que el procedimiento de allanamiento es nulo porque la evidencia fué ocupada en poder de una tercera persona no mencionada en la orden de allanamiento. No es la tercera persona quien plantea la invalidez del procedimiento, ni está envuelta directamente la validez del registro desde el punto de vista de la tercera persona—Pedro López en este caso. Sin embargo, en el diligenciamiento de la orden de allanamiento el cabo Padilla expone bajo juramento que se le ocupó, a Pedro López, dentro de la casa del acusado, una funda conteniendo listas de papel con números apuntados para el juego ilegal de la bolita, en momentos en que se la entregaba al acusado. Ello conectaba al acusado con material usado en el juego de la Bolita y, por lo tanto, la posesión de ese material por Pedro López bajo las circunstancias envueltas debe atribuirse al acusado, y la ocupación de tal material en poder de Pedro López debe considerarse como una ocupación de los artículos mientras estaban en el poder del acusado. ([1])

Sostiene el apelante que el allanamiento es nulo porque en la propia orden de allanamiento no se expone que el allanamiento debía ejecutarse dentro del término de diez días que transcurran después de dicha orden. En este caso, en la orden se dice que el registro se verifique "lo más pronto posible". La orden se expidió el día 20 de agosto de 1951. En el diligenciamiento se expone que el registro se practicó el 25 de agosto del mismo año. No tiene razón el apelante.

---

([1]) En el transcurso del juicio el cabo Padilla declaró, en forma aparentemente contraria a lo expuesto por él en el diligenciamiento de la orden, que los policías habían agarrado a Pedro López mientras éste trataba de huir por dentro de la sala de la casa. De otro lado, Pedro López declaró que cuando llegaron los policías él le estaba entregando la colecta de la Bolita al acusado y entonces trató de huir cuando vió a los policías. De todos modos, a los fines de la validez del allanamiento deben considerarse como ciertas las afirmaciones contenidas en la declaración jurada, sin que puedan ser afectadas por testimonio contrario presentado en el curso del juicio. (*Pueblo* v. *Villariny* 71 D.P.R. 741 y véase la monografía en 5 A.L.R. (2d) 394.)

El artículo 512 del Código de Enjuiciamiento Criminal, dispone que una orden de allanamiento debe ser ejecutada y devuelta dentro de los diez días de su fecha.   No dice que esto se hará constar en la propia orden.   Lo esencial es cumplir con la realidad de que el allanamiento se verifique dentro de los diez días estatutarios.   No es necesario que en la orden se exponga formalmente que se verifique el allanamiento dentro de los diez días si, como cuestión de hecho, tal registro se ha producido dentro de ese período de tiempo.   *Pueblo* v. *Mantilla*, 71 D.P.R. 36, 51; *Pueblo* v. *Báez*, 70 D.P.R. 609, 612 y *Pueblo* v. *Tonje*, supra.

El apelante alega que, no obstante exponer el cabo Padilla que él diligenció la orden el 25 de agosto de 1951, él aparece jurando tal diligenciamiento el día 20 de agosto.   Es obvio que se trata de un mero error clerical que no afecta la realidad que surge de la propia certificación de diligenciamiento.

■■ El segundo error señalado consiste en la alegación del acusado de que la prueba presentada por el ministerio público es insuficiente para sostener una convicción.   Específicamente se expone que el testimonio del cómplice Pedro López no fué debidamente corroborado.   Se admite que Pedro López era un cómplice y que su declaración, aisladamente, inculpa al acusado.   Además de Pedro López, declararon, por el ministerio público, los testigos Miguel García Álvarez y el cabo de la policía insular José M. Padilla.   El acusado no presentó prueba.

El testigo Miguel García Álvarez declaró, en el interrogatorio directo, sustancialmente lo siguiente:

"Conoce de vista al acusado; un día que el testigo pasaba, el acusado le dió un bultito para que se lo llevara a un sitio; el testigo no sabía lo que contenía ese bulto; él no abrió el bulto; 'él me lo entregó para que yo se lo entregara a un hijo de la señora Andino; y el otro señor es Julio Andino y a Luis García Vargas, *para esas personas eran las libretas*' (bastardillas nuestras) ; el testigo sacaba del bulto y entregaba a esas personas;

el bulto llevaba unas libretas dentro; esas libretas eran para combinar bolita."

En el re-directo, y después de la repregunta, el testigo declaró que el acusado le dió paquetes una sola vez pero que él no llegó a entregar ese paquete ya que un policía de apellido Torres lo cogió con ese paquete; el testigo iba andando por la carretera y el acusado lo encontró y le dió ese paquete; el testigo siguió a pie por el camino y Torres el policía lo cogió con ese paquete; el testigo dice que no sabía lo que tenía el paquete.

El fiscal le mostró una declaración jurada suscrita anteriormente por el propio testigo ante el fiscal, en la cual el testigo expuso que él trabajaba con el acusado hacía seis meses, pero el testigo insistió en la silla testifical que él no trabajaba con el acusado. El fiscal leyó su declaración jurada al efecto de que el día 10 de agosto de 1951, él iba con una bolsa de papel conteniendo 15 libretas en blanco y con papel carbón por el Barrio Cerro Gordo de Bayamón y entonces el policía Cristóbal Torres lo sorprendió con las libretas, las cuales le ocupó y que esas libretas se las había dado el acusado. El testigo dijo entonces que él no sabía lo que iba en ese paquete, pero inmediatamente dijo que el acusado le dió esas libretas para llevárselas a esa gente, para combinar bolita. El testigo repite que él no sabía lo que iba dentro del paquete. La corte le preguntó entonces que por qué él había dicho que era para combinar y el testigo contestó que sabía porque el acusado se lo había dicho.

El testigo José M. Padilla, cabo de la policía insular, declaró que el 25 de agosto de 1951 él registró la casa del acusado, de siete a siete y media de la tarde; el acusado estaba en la sala de su casa; Pedro López huía por dentro de la sala de la casa con una funda de papel y otro policía lo agarró y le quitó la funda; el acusado al otro día declaró en el cuartel de la policía en presencia del testigo, de Pedro López y de varios policías y el acusado manifestó que él era un agente de una banca de bolita; que él recogía para un banquero que

él no conocía; que Pedro López Cintrón era un bolitero que le entregaba las colectas de la bolita a él; que esa colecta que se le ocupó a Pedro López era para él; que el acusado era el encargado de recibir el material de bolita; que después él recibía el dinero de esa bolita; que él era el encargado también de recibir los premios y de entregárselos a los boliteros. El testigo dijo que el acusado había declarado lo mismo ante el Fiscal y siguió diciendo que al verificarse el allanamiento el acusado estaba en la sala de su casa al lado de Pedro López.

Las declaraciones de Miguel García Álvarez y el cabo Padilla tienden a conectar al acusado con la comisión del delito imputado y, por lo tanto, constituyen suficiente corroboración. *Pueblo* v. *Portalatín*, 72 D.P.R. 152 y *Pueblo* v. *Portalatín*, 73 D.P.R. 334. Es cierto que la declaración de Miguel García Álvarez fué algo imprecisa e inconsistente. Sin embargo, el tribunal inferior tenía el derecho a creer en aquellas partes del testimonio de Álvarez que tendían a conectar al acusado con la comisión del delito, teniendo en cuenta especialmente que no se ha impugnado la apreciación que de la prueba hizo el tribunal inferior.

Se alega que Miguel García Álvarez era también un cómplice y que, por lo tanto, su testimonio no podía corroborar legalmente la declaración del otro cómplice Pedro López Cintrón. Un cómplice no puede corroborar a otro cómplice. *Pueblo* v. *Portalatín*, 63 D.P.R. 641 y 7 Wigmore, 3ra. ed., pág. 326. Realmente, el testigo García Álvarez declaró que él conocía el contenido del paquete que le entregó el acusado para entregar a otras personas, o sea, material de bolita, ya que el propio acusado se lo había dicho. Bajo esas circunstancias, García Álvarez no era un mero instrumento, pasivo o inocente, del acusado. Él intentó ayudar conscientemente en la comisión de un delito y, por lo tanto, era un cómplice. Un cómplice es aquél que a sabiendas y voluntariamente, de su libre albedrío e intencionalmente, participa en alguna forma en la comisión de un delito, pudiendo, en su

762

consecuencia, procesársele por el mismo. *Pueblo* v. *Rosado*, 72 D.P.R. 827.

Sin embargo, e independientemente de la declaración de García Álvarez, el testigo José M. Padilla, cabo de la policía insular, declaró que el acusado había hecho admisiones, en su presencia, en cuanto a la comisión del delito. Las admisiones o confesión de un acusado constituyen de por sí suficiente corroboración de la declaración de un cómplice. *Pueblo* v. *Portalatín*, supra, y *Pueblo* v. *Feliciano*, 70 D.P.R. 875.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Sr. Todd, Jr., no intervino.